UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                                  Case No. 10-41156-PGH
                                                        Chapter 11
R. BRADFORD ENGELHARDT,

     Debtor.

_____/

**DEBTOR'S MOTION (A) TO COMPEL COMPLIANCE WITH CONFIRMED PLAN
AND SETTLEMENT AGREEMENTS AND (B) FOR SANCTIONS FOR NON-
COMPLIANCE WITH CONFIRMED PLAN AND SETTLEMENT AGREEMENTS,
AND FOR VIOLATIONS OF THE DISCHARGE INJUNCTION**

Debtor in Possession R. BRADFORD ENGELHARDT, (the "Debtor" or the "Reorganized Debtor"), by and through undersigned counsel, pursuant to 11 U.S.C. §§ 350(b), 524(a)(2) and (i), 1141(a),(c),(d)(1)(A) and (5)(A); the Fair Debt Collection Practices Act; the Florida Consumer Collection Practices Act; F.R.B.P. 5010; and Local Rule 5010-1, files this Motion (A) to Compel Compliance with Settlement Agreements and with regard to a Confirmed Chapter 11 Plan and (B) for Sanctions for Non-Compliance with Confirmed Plan and for Violations of the Discharge Injunction against, Nationstar Mortgage LLC ("Nationstar"), Seterus, Inc. ("Seterus"), Federal National Mortgage Association ("Fannie Mae"), and Ocwen Financial ("Ocwen") (collectively referred to herein as the "Creditors"), and in support thereof, states as follows:

CASE BACKGROUND

1.     The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 13, 2010.

2.     The Debtor's *Amended Plan of Reorganization* [ECF 251] (the "Plan") was filed on February 2, 2012 and confirmed by this Court on June 29, 2012, as per this Court's *Order Confirming Plan* [ECF 293] (the "Confirmation Order").

3.      The Debtor's *Final Report and Motion for Final Decree* [ECF 297] (the "Final Report") was filed on August 13, 2012.

4.      The Debtor received his discharge on September 28, 2012, as evidenced by the *Order of Discharge and Final Decree* [ECF 312] (the "Discharge Order").

5.      On September 30, 2015, the Debtor filed a *Motion (A) to Compel Compliance with Confirmed Plan and (B) for Sanctions for Non-Compliance with Confirmed Plan and for Violations for the Discharge Injunction* [ECF 322] (the "Sanctions Motion") against Wells Fargo, Owen, and Nationstar for, *inter alia*, non-compliance with the confirmed plan.

6.      Settlements were reached with all three creditors, and the Sanctions Motion was withdrawn on June 6, 2016. The Debtor's case was subsequently closed again.

7.      Since this last closing of the Debtor's case, Wells Fargo has complied with the settlement agreement. However, creditors Ocwen and Nationstar have not complied with their agreements.

8.      Ocwen has not complied with its settlement agreement by failing to send monthly statements to the Debtor. The Debtor has no basis by which to determine if his payments are being credited to his account. If said payments are not being credited, then Ocwen would be in violation of 11 § U.S.C. 524(i).  In addition, Ocwen continues to charge the Debtor for forced placed lender insurance, even though the Debtor continually and repeatedly provides copies of all of his insurance policies to Ocwen, and said insurance policies are more than sufficient to cover the insurance requirements for the properties.

9.      Nationstar has not complied with its settlement agreement by failing to send monthly statements to the Debtor. The Debtor has no basis by which to determine if his payments are being credited to his account. If said payments are not being credited, then Ocwen would be in violation of 11 § U.S.C. 524(i).

10.     Seterus, the servicer for Fannie Mae, does not send statements to the Debtor, even after repeated requests. The Debtor is unable to determine if his payments are being credited correctly and is also unable to determine if Seterus is paying his taxes and insurance through escrow payments. The Debtor has no basis by which to determine if his payments are being credited to his account. If said payments are not being credited, then Ocwen would be in violation of 11 § U.S.C. 524(i).

<u>SECURED CREDITORS</u>

11.     Seterus[1], Ocwen, and Nationstar are secured creditors in the Debtor's bankruptcy case.

12.     Ocwen is the servicer for three mortgage loans for three of the Debtor's rental properties:

     a.  215 Lake Arbor Dr., Palm Springs, FL 33461 (loan #6553)

     b.  337 Lake Arbor Dr., Palm Springs, FL 33461 (loan #5433)

     c.  363 Lake Arbor Dr., Palm Springs, FL 33461 (loan #0037)

13.     Nationstar is the servicer for three mortgage loans for three of the Debtor's rental properties:

     a.  91 Lake Arbor Dr., Palm Springs, FL 33461 (loan #3465)

     b.  354 Lake Arbor Dr., Palm Springs, FL 33461 (loan #3457)

     c.  165 Lake Arbor Dr., Palm Springs, FL 33461 (loan #3473)

14.      Seterus is the servicer for two mortgage loans for two of the Debtor's rental properties:

     a.  252 Lake Arbor Dr. (Acct. # 0444)

---

[1] Seterus now holds the loan previously held during the bankruptcy by Bank of America, NA, f/k/a Countrywide Home Loans, BAC Home Loans Servicing, LP.

3

b.  120 Lake Arbor Dr. (Acct. # 0498)

c.  256 Lake Arbor Dr. (Acct. # 8005) [This loan is owned by Fannie Mae.]

<u>THE PLAN</u>

15.  The Plan provides for the treatment of the Ocwen claims as follows:

a.  Class 11 - Secured amount of $68,000.00 for property located at 215 Lake Arbor Dr., Palm Springs, FL, to be paid over 30 years fully amortized at 5.25%, for a monthly payment of $375.50 (the "<u>Class 11 payment</u>"), with the Debtor responsible for the payments of property taxes and insurance.

b.  Class 17 - Secured amount of $69,500.00 for property located at 337 Lake Arbor Dr., Palm Springs, FL, to be paid over 30 years fully amortized at 5.25%, for a monthly payment of $383.78 (the "<u>Class 17 payment</u>"), with the Debtor responsible for the payments of property taxes and insurance.

c.  Class 19 - Secured amount of $68,000.00 for property located at 363 Lake Arbor Dr., Palm Springs, FL, to be paid over 30 years fully amortized at 5.25%, for a monthly payment of $375.50 (the "Class 19 payment"), with the Debtor responsible for the payments of property taxes and insurance.

16.  The Plan provides for the treatment of the Nationstar claims as follows:

a.  Class 4 - Secured amount of $68,000.00 for property located at 91 Lake Arbor Dr., Palm Springs, FL, to be paid over 30 years fully amortized at 5.25%, for a monthly payment of $375.50 (the "<u>Class 4 payment</u>"), with the Debtor responsible for the payments of property taxes and insurance.

b.  Class 10 - Secured amount of $68,000.00 for property located at 165 Lake Arbor Dr., Palm Springs, FL, to be paid over 30 years fully amortized at 5.25%, for a monthly payment of $375.50 (the "<u>Class 10 payment</u>"), with

4

the Debtor responsible for the payments of property taxes and insurance.

    c.   Class 18 - Secured amount of $65,000.00 for property located at 354 Lake Arbor Dr., Palm Springs, FL, to be paid over 30 years fully amortized at 5.25%, for a monthly payment of $358.93 (the "Class 19 payment"), with the Debtor responsible for the payments of property taxes and insurance.

17.    The Plan provides for the treatment of the Seterus claims as follows:

    a.   Class 12 - Secured amount of $68,000.00 for property located at 252 Lake Arbor Dr., Palm Springs, FL, to be paid over 30 years fully amortized at 5.25%, for a monthly payment of $375.50 (the "Class 12 payment"), with the Debtor responsible for the payments of property taxes and insurance.

    b.   Class 5 - Property located at 120 Lake Arbor Drive, Palm Springs, FL, the Creditor filed an 1111(b)(2) election. The payment of P.O.C. #10 representing a stream of cash payments with a face value $176,986.30 and which have a present value of at least the value of the collateral, which is $68,000.00 to be paid over 30 years, for a monthly payment of $491.63 (the "Class 5 payment"), with the Debtor responsible for the payments of property taxes and insurance.

    c.   Class 13 - Secured amount of $68,000.00 for property located at 256 Lake Arbor Dr., Palm Springs, FL, to be paid over 30 years fully amortized at 5.25%, for a monthly payment of $375.50 (the "Class 13 payment"), with the Debtor responsible for the payments of property taxes and insurance.

POST-CONFIRMATION COMPLIANCE BY THE DEBTOR

18.     As to the Seterus monthly payments, the Debtor has paid the monthly payments as stated in the Plan; in fact, there were several months where the Debtor paid more than the Plan amounts.

19.     As to the Ocwen monthly payments, the Debtor has paid the monthly payments as stated in the Plan, in fact, there were several months where the Debtor paid more than the Plan amount. The Debtor has also maintained adequate insurance on all properties, and has provided all proofs of insurance to Ocwen.

20.     As to the Nationstar monthly payments, the Debtor has paid the monthly payments as stated in the Plan; in fact, there were several months where the Debtor paid more than the Plan amount.

<u>VIOLATIONS COMMITTED BY SETERUS</u>

21.     Since Seterus became the servicer of the three loans, Seterus has failed to send monthly statements to the Debtor and has failed to respond to inquiries as to the loans held by Seterus.

22.     In addition, Seterus has sent correspondence and a yearly escrow statement for each property to Debtor's attorney to a law firm and at an address where the Debtor's attorney has not worked for at least six years. Debtor's counsel has repeatedly notified Seterus as to the address change, but Seterus has failed to correct the notice address.

23.     The Debtor as well as Debtor's counsel have repeatedly contacted Seterus in an attempt to rectify the problems above, but to no avail, thereby necessitating the filing of this Motion. See attachment of correspondence, Exhibit "A".

<u>VIOLATIONS COMMITTED BY NATIONSTAR</u>

24.     Pursuant to the Plan and to the settlement agreement referenced above, Nationstar has failed to send monthly statements to the Debtor.

<u>VIOLATIONS COMMITTED BY OCWEN</u>

25.    Pursuant to the Plan and to the settlement agreement Nationstar has failed to send monthly statements to the Debtor.

26.    Ocwen requested that the Debtor sign an authorization requesting that they send the monthly statements directly to the Debtor. On August 26, 2016, the Debtor signed and Debtor's counsel emailed the requested authorization to the attorney for Ocwen. See Exhibit "B".

27.    Ocwen has also continuously purchased forced placed insurance policies upon the Debtor's properties, yet the Debtor has provided numerous copies of his insurance policies by way of fax and mail. Regardless, Ocwen continues to send notices that the Debtor has no insurance.

28.    Debtor's counsel has communicated with Ocwen's counsel in an attempt to rectify the situation, and Ocwen's counsel has diligently been trying to resolve the situation. However, as of the filing of this Motion, the resolution is not complete, and the Debtor has expended many hours of his time and has incurred unnecessary legal fees in trying to fix his problems with the Ocwen loans.

<u>PREVIOUS VIOLATIONS COMMITTED BY THE CREDITORS</u>

29.    As noted above, in September of 2015, the Debtor filed his Sanctions Motion against the creditors referenced herein, and as some of the issues raised in that motion have been resolved, the Debtor still is having problems with these creditors, over one year later. Below is a recap of the problems which the Debtor has endured since Confirmation.

*Violations Committed by Nationstar*

30.    Since Confirmation, the Reorganized Debtor was making monthly payments on all loans originally serviced by Cenlar without encountering any problems. In addition, most

months the Debtor made more than the monthly payments as required under the Plan.

31.     Beginning October and November 2014, and for no apparent reason, Cenlar stopped cashing the Debtor's checks for payments on all 3 Cenlar/Nationstar properties. Approximately 6 weeks after the November check was sent, Cenlar returned the uncashed October and November checks to the Debtor in an envelope from the payment processing center, which read, "The enclosed check is being returned to you because we are unable to identify your loan account or your loan is no longer serviced at the address to which the check was mailed". See Exhibit "B"[2].

32.     On May 1, 2015, Bayview Loan Servicing ("<u>Bayview</u>") mailed a letter to the Debtor regarding the past due status of one of the Nationstar Loans (defined below); specifically, for the property at 91 Lake Arbor Drive (Bayview loan #7114) (the "<u>91 Property</u>"). See attached Exhibit "C". Inexplicably, Bayview stated that it was the servicer of the loan, yet only 20 days later, Cenlar stated that *it* was the new servicer.

33.     On May 21, 2015, the Debtor received a letter from Cenlar with a notice of servicing transfer to Nationstar for all three loans (the "<u>Nationstar Loans</u>"). See Exhibit "D".

34.     Even though the Debtor repeatedly attempted to make all payments for all Nationstar loans, and said payments were either returned or not cashed, Nationstar nevertheless sent the Debtor a letter, dated June 30, 2015, stating that he was in default as to the loan on the 91 Property. See Exhibit "E".

35.     Notably, in Nationstar's Notice of Servicing Transfer for the 91 Property, it states, "Our records indicate your account is escrowed for taxes and/or insurance. Your payment amount includes your tax and/or insurance escrow payment." See Exhibit "F", p. 2.

---

[2] All exhibits referenced in paragraphs 30-49 are attached to the first Sanctions Motion filed in 2015.

However, this is in violation of the Plan, as the Plan clearly states that the loans are not to be escrowed. See Plan, p. 4. In addition, as can be seen in Exhibits "E" and "F", Nationstar notified the Debtor as to its new position as the servicer of the loans only 4 days before it issued a notice of default.

36.     As to the loan on 165 Lake Arbor (the "165 Property"), the Notice of Servicing Transfer states that the loan is _not_ escrowed. See Exhibit "G", p. 2. However, on the mortgage statement sent by Nationstar to the Debtor on September 1, 2015, Nationstar stated that the Debtor owed $7,339.94, even though the Servicing Notice sent only 3 months prior said that the loan was not escrowed, and even though the Debtor was current on his property taxes and insurance. See Exhibit "H" [3].

37.     Nationstar, through its counsel Albertelli Law, sent the Debtor a pre-foreclosure letter on August 5, 2015. See Exhibit "I". Phone calls and emails from undersigned counsel to counsel for Albertelli Law were not returned.

38.     Nationstar, through Albertelli Law, filed a foreclosure action on September 3, 2015 as to the 91 Property (Nationstar loan #3465). See Exhibit "J".

39.     Due to Cenlar's, Bayview's, and Nationstar's actions and inactions, the Debtor was incurring damages because of (a) a pending foreclosure sale that is due solely to the mortgagee's/servicer's errors, (b) harm to his business as a landlord, as his tenants are receiving notices of default and/or foreclosure, (c) continued downgrades to his credit rating, (d) the mental and emotional distress of being harassed by a creditor whose debt has been discharged, (e) the legal fees, time and inconvenience of dealing with this matter, (f) the uncertainty that if the Debtor were to sell his rental property, that there may be a lien on the

---

[3] To add insult to injury, on said mortgage statement, Nationstar listed over 50 charges for "property inspections", as well as for legal fees and for servicer advancements.

property which is a different amount than that which is stated in his confirmed plan, and (g) the uncertainty of owing a debt that no longer exists.

*Violations Committed by Nationstar*

40.    From the date of Confirmation, the Reorganized Debtor timely made all monthly payments on all Ocwen loans, as directed.

41.    However, beginning in August 2014, Ocwen began returning checks sent by the Debtor, stating that the funds sent in were not sufficient to satisfy the reinstatement of the loan. See Exhibit "K". Ocwen returned 2 checks, for $2,000 each, even though the monthly payments were only $383 and there was no arrearage to cure.

42.    Furthermore, as can be seen in its delinquency notice, claimed that the Debtor failed to make payments from January through June of 2014. This was simply not true as the Debtor had always made payments on time. In addition, the monthly amounts listed as in default are not the monthly amounts called for in the Plan. Therefore, Ocwen has been demanding payments in excess of the amounts stated in the Debtor's confirmed Plan.

43.    In addition, on May 20, 2015, Ocwen inexplicably sent a mortgage statement to the Debtor stating that he had entered a "Trial Modification Plan", even though the Debtor never made any agreement with Ocwen as to a loan modification, and even though the loan was modified through the confirmed Plan and all payments were timely made. See Exhibit "L".

44.    The Debtor and Debtor's counsel repeatedly reached out to Ocwen in an attempt to rectify the situation, but to no avail, necessitating the filing of this Motion.

45.    Debtor's counsel has communicated with Ocwen's counsel in an attempt to rectify the situation, and Ocwen's counsel has diligently been trying to resolve the situation. However, as of the filing of this Motion, the resolution is not complete, and the Debtor has

expended many hours of his time and has incurred unnecessary legal fees in trying to fix his problems with the Ocwen loans. The Debtor was promised a ledger, showing the accounting of past payments and the accurate amounts due, but as of the filing of this Motion, said ledger has not been received.

46.     Due to Ocwen's actions and inactions, the Debtor was incurring damages because of (a) continued downgrades to his credit rating, (b) the legal fees, time and inconvenience of dealing with this matter, (c) the uncertainty that if the Debtor were to sell his rental properties, that there may be a lien on the property which does not accurately reflect the true balance owed, and (d) the uncertainty of owing a debt that no longer exists.

## **LEGAL BASIS FOR RELIEF SOUGHT**

47.     <u>Discharge and Confirmation:</u> 11 U.S.C. § 524(a) provides in relevant part:

A discharge in a case under this title—

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived...

11 U.S.C. § 524(i) provides in relevant part:

> The willful failure of a creditor *to credit payments received* under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor. [Emphasis added.]

11 U.S.C. § 1141(a) provides in relevant part:

> . . . the provisions of a confirmed plan bind…any
> creditor… whether or not such creditor…has accepted
> the plan...

11 U.S.C. § 1141(d)(1)(A) provides in relevant part:

> …the confirmation of a plan—
> (A) discharges the debtor from any debt that arose
> before the date of such confirmation…

Section 524 "embodies the 'fresh start' concept of the bankruptcy code**.**" *In re Hardy*,

97 F.3d 1384, 1388-89 (11th Cir. 1996).

48.    <u>Private Right of Action.</u> In *In re Hardy*, 97 F.3d 1384, 1388-89 (11th Cir.

1996) the Eleventh Circuit rejected the creditor's argument that section 524 only provides for

injunctive relief, holding that:

> Instead of grounding liability for violation of the
> permanent stay in the court's inherent contempt powers
> and §524, we exercise the caution recommended by the
> Court in *Chambers* and rely on the other available
> avenue for relief, statutory contempt powers under
> §105.
>
> *Id*. at 1389.

The Eleventh Circuit's decision in *Hardy* has been followed and relied upon by the

bankruptcy courts here in the Southern District. See, for example, Judge Kimballs' ruling in

*In re WVF Acquisition*, 420 B.R. 902, Case No. 09-30483-EPK; Judge Olson's rulings in *In re*

*Breyer*, 386 B.R. 895, Case No. 07-12387-JKO and in *In re Haque*, 395 B.R. 799, Case No.

08-14257-JKO; and Judge Cristol's rulings in *Rosenberg v. DVI Receivables* (*In re*

*Rosenberg*), Case No. 10-03812-AJC and *In re Cohen*, 1999 WL 1424992, Case No. 92-

160140-AJC. It is well settled that bankruptcy courts can combine section 105 with section

524 to enforce the provisions of the Discharge Injunction and to award compensatory

damages for willful violations of the Discharge Injunction. *In re Hardy* at 1189; *see also In*

*re Wallace*, 2011 WL 1335822 (Bankr. M.D. Fla. 2011).

49.    <u>Willfulness</u>. Conduct is deemed willful if the creditor: "(i) knew that the Discharge Injunction was invoked and (ii) intended the actions that violated the Discharge Injunction." *In re Hardy* at 1390; *see also Jove Eng'g. v. IRS (In re Jove)*, 92 F.3d 1539, 1545 (11th Cir. 1996). The subjective beliefs or intent of the creditor are irrelevant. *In re Hardy* at 1390; *In re Thompson*, 456 B.R. 121, 137 (Bankr. M.D. Fla. 2010). Receipt of notice of a debtor's discharge is sufficient to establish the knowledge element of the two-part test. *In re Hardy*, at 1390. *See also Bibolotti v Am Home Mortgage Servicing Corp*., 2013 WL 2147949(E.D.Tex.2013) (Solicitation of mortgage modification is a violation of Discharge Injunction) [See Exhibit "L" to the Sanctions Motion for evidence of Ocwen's solicitation for a mortgage modification as to loan that was already permissibly modified in the Plan, and for which no default had occurred.]

50.    <u>Non-Compliance with Confirmed Plan.</u> The Creditors have failed to abide by this Court's Confirmation Order. As section 11 U.S.C. § 1141(a) states, "…the provisions of a confirmed plan bind…any creditor…" In the present case, the Creditors have not complied with the Plan, in that they have failed to acknowledge the application of timely and complete payments in direct violation of Section 524(i) of the Bankruptcy Code ("The willful failure of a creditor to credit payments received under a plan confirmed under this title…shall constitute a violation of [the Discharge Injunction].") These actions demonstrate a complete disregard for the Confirmation Order, as well as violations of the Discharge Injunction. The Creditors have not only returned payments made by the Debtor for the amounts listed in his Plan, but also have charged the Debtor for force placed insurance and have tried to pay the property taxes, even though the Plan states that the Debtor is responsible for said costs. Therefore, these creditors are not recognizing the provisions of the Plan, as it appears that the Creditors' internal systems have not been updated to reflect said terms.

51.    <u>Fair Debt Collection Practices Act</u>. The Creditors' actions described herein are clear violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("**FDCPA**").

15 U.S.C. § 1692e provides in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*\*\*

(2) The false representation of --

(A) the character, amount, or legal status of any debt;

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e provides in relevant part:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the

14

debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

In the present case, the Creditors, with actual notice of the reduced and/or discharged debts of the Debtor, (a) continue to send erroneous statements to the Debtor or have failed completely to acknowledge that Debtor's payments are being credited, and (b) communicate false credit information as to the alleged defaults to the Credit Bureaus. In addition, though both the Debtor and Debtor's counsel repeatedly notified the Creditors that statements and payoff letters needed to be sent, the Creditors failed to abide by the terms listed above; namely, by not sending the Debtor any verification of the debt owed.

52.    <u>Florida Consumer Collection Practices Act</u>. The Creditors' actions described herein are clear violations of the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.72 *et seq.* ("**FCCPA**").

Fla Stat. 559.72(9) provides in relevant part:

In collecting consumer debts, no person shall claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

Fla Stat. 559.730 provides in relevant part:

Grounds for disciplinary action; administrative remedies.—

(1)   Each of the following acts constitutes a ground for which the disciplinary actions…may be taken:

15

> (b)    Fraud, misrepresentation, deceit, negligence, or incompetence in a collection transaction.

In the present case, the Creditors committed, if not fraud, then "negligence" or, at the very least, demonstrated "incompetence", as per Fla Stat. 559.730(1)(b), since the Creditors had over 6 years to update their invoicing systems and correct the statements being sent to the Debtor.

DAMAGES

53.    <u>Actual Damages and Fees</u>. When a bankruptcy court determines that a willful violation of the Discharge Injunction has occurred, the court's awarding of actual damages can include an amount for attorney's fees that the Debtor incurred as a result of the violation. In addition, the court may determine that the Reorganized Debtor has been actually damaged by, e.g., the continuing harm to his or her credit rating and history. *See In re Wallace* (Discussion about types of damages that may be awarded). Furthermore, numerous bankruptcy courts have awarded actual damages for non-compliance with a confirmed chapter 11 plan, even when a discharge has not yet been entered. *See e.g. In re Castle Home Builders, Inc.*, 520 B.R. 98, 109 (Bankr. N.D. Ill. 2014) (Bankruptcy court awarded actual damages of $100,000 for non-compliance of confirmed chapter 11 plan where, post-confirmation, servicer continued to bill the debtor for prepetition principal amount, interest rate and amortization period, notwithstanding the modification of the mortgage as per the plan.); *See also Turner v. Mellon Mortgage Co. (In re Mellon)*, 221 B.R. 920 (Bankr. M.D. Fla. 1998) (Damages, attorney's fees, and costs awarded to debtor when mortgagee knowingly failed to abide by provisions of debtor's confirmed plan; specifically, failing to apply debtor's post-confirmation payments on mortgage debt as specified in the plan.); See also *In re Dynamic Tours & Transp., Inc.* at 344

16

(Creditor violated injunction under statute addressing effects of plan confirmation when it instituted action against debtor to collect amounts that were included in proof of claim.)

54.    <u>Emotional Distress</u>.    A bankruptcy court can also award damages for emotional distress as part of a debtor's actual damages. In this district, as well as in the Middle District, bankruptcy judges have awarded monetary sanctions for emotional distress caused by violations of the Discharge Injunction. See *In re Manzanares*, 345 B.R. 773 (Bankr. S.D. Fla. 2006); *See also In re Diaz*, 452 B.R. 257 (Bankr. M.D. Fla. 2009), rev'd on basis of sovereign immunity of state 647 F.3d 1073(11th Cir. 2011); *In re Nibbelink*, 403 B.R. 113, 120-21 (Bankr. M.D. Fla. 2009); *In re Wallace* at 4; and *In re Thompson* at 137.

55.    <u>Punitive Damages</u>. In addition to actual damages, bankruptcy courts may use the express authority of section 105 to award punitive damages. *See Nibbelink,* 403 B.R. at 122; See also *In re Wallace* at 8 ("The Court finds the appropriate standard in assessing punitive damages [for violations of the Discharge Injunction] is whether the creditor has acted with actual knowledge of the violation or with reckless disregard of the protected right.") In the present case, it is clear from the evidence presented that the Creditors had actual knowledge of the violations and nevertheless continued to harass and damage the Debtor with apparent recklessness as to the Debtor's rights. In the recent Middle District Bankruptcy Court case *In re Baltzer*, 2014 WL 7149724 (Bankr. M.D. Fla. 2014), Judge Jennemann awarded punitive damages of $112,465.90 to a Chapter 7 debtor after the servicer repeatedly sent the debtor mortgage statements after the discharge was entered: "An award of punitive damages is appropriate because Bayview [the servicer] acted with actual knowledge of the violations and with a reckless disregard of the Debtor's protected right of a discharge." *Id.* at 3. See also *In re Dynamic Tours & Transportation Inc*., 359 B.R. 336, 344 (Bankr. M.D. Fla. 2006) and *In re White*, 410 B.R. 322, 327 (Bankr. M.D. Fla. 2009).

56.    <u>FDCPA Civil Liability</u>. Due to the numerous FDCPA violations described above, the Debtor is entitled to further monetary sanctions. According to 15 U.S.C. § 1692k:

> (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of --
>
> (1) any actual damage sustained by such person as a result of such failure; and
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

57.    <u>FCCPA Civil Liability</u>. Due to the FCCPA violations described above, the Debtor is entitled to further monetary sanctions. According to Fla Stat. 559.77:

> Civil remedies.—
>
> (2)    Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s. 559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional. The court may award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part.

58.    The violations committed by the Creditors call for punitive damages, actual damages, fees and costs, and this Court can look to "the "frequency and persistence of the non-compliance" (the Creditors have continuously committed violations such as failing to send

18

updated statements and reporting the Debtor's "delinquencies" to the Credit Bureaus, for over 6 years) and "the extent to which the non-compliance was intentional" (the Creditors have had numerous opportunities to remedy the errors described herein, and have willfully chosen to ignore this Court's orders as well as settlement agreements with the Debtor.)

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (a) finding that Nationstar, Seterus, Fannie Mae and Ocwen willfully violated the Discharge Injunction and failed to comply with the Debtor's Confirmed Plan; (b) compelling Nationstar, Seterus, Fannie Mae and Ocwen to immediately comply with the Plan; (c) compelling Nationstar, Seterus, Fannie Mae and Ocwen to immediately update their internal billing and record-keeping systems to accurately reflect the terms of the Plan, provide full credit for payments already made, and remove all late fees, penalty and interest as well as force placed insurance charges; (d) directing Nationstar, Seterus, Fannie Mae and Ocwen to contact the three major credit bureaus and have the previous reporting of defaults removed; (e) compelling the Creditors to abide by the settlement agreements; (f) directing the Creditors to immediately commence the sending of monthly statements as well as payoff letters directly to the Reorganized Debtor; (g) awarding the Debtor actual damages, punitive damages, and attorney's fees and costs, for violations of the Discharge Injunction, for non-compliance with the confirmed Plan, and for violations of the Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act; and (h) for such other and further relief as the Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished to all creditors and interested parties along with the Notice of Hearing on this Motion.

Respectfully submitted,

FURR COHEN
*Counsel for the Reorganized Debtor*
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
(561) 395-0500/(561)338-7532-fax

By */s/Aaron A. Wernick*
  Aaron A. Wernick
  Florida Bar No. 14059
  E-mail: awernick@furrcohen.com

## EXHIBIT "A"

**From:** Coleen Workinger
**Sent:** Wednesday, March 09, 2016 4:06 PM
**To:** PreservationBK@seterus.com
**Subject:** Loan number        '0444 RE: 252 Lake Arbor Dr., Palm Springs, FL 33461-2161

Please note this property which belongs to our client R. Bradford Engelhardt is occupied at this time and will remain occupied.

Please change the address you have in your system for the Debtor's Aaron Wernick to Furr & Cohen, P.A., 2255 Glades, Road, Suite 337 W, Boca Raton, FL 33431

Also please begin sending all correspondence, along with monthly statements directly to the Debtor R. Bradford Engelhardt, 7661 Nemec Dr. S., West Palm Beach, FL 33406.

Please feel free to contact our office should you have any questions.

Thank you.



**Coleen C. Workinger** ◆ **Paralegal**
**2255 Glades Road. Suite 337W** ◆ **Boca Raton, FL  33431**
**Ph. (561) 395-0500** ◆ **Direct (561)-417-1575** ◆ **Fax (561)-338-7532**
**Email: cworkinger@furrcohen.com** ◆ **Website: www.furrcohen.com**

Please consider the environment before printing this e-mail.

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended to be delivered to, and for the use of, only the individual(s) to whom it is addressed. It may contain information that is confidential, proprietary, attorney work product, attorney-client privileged, or subject to other doctrines and/or privileges recognized under applicable law. If you are not the intended recipient, do not read this message but instead please immediately notify the sender by electronic mail and by telephone to (561) 395-0500 and obtain instructions as to the disposal of the transmitted material. In no event is this material to be read, used, copied, reproduced, stored, or retained by anyone other than the named addressee(s) except with the express consent of the sender. DISCLAIMER REGARDING UNIFORM ELECTRONIC TRANSACTIONS ACT ("UETA") (FLORIDA STATUTES SECTION 668.50): If this communication concerns negotiation of a contract or agreement, UETA does not apply to this communication. Contract formation in this matter shall occur only with manually affixed original signatures on original documents.

## Coleen Workinger

| | |
|---|---|
| **From:** | Coleen Workinger |
| **Sent:** | Wednesday, January 20, 2016 4:56 PM |
| **To:** | PreservationBK@seterus.com |
| **Subject:** | R. Bradford Engelhardt Loan #̄    0444 / Ch 11 Case #10-41156-PGH |
| **Attachments:** | ltr fr Seterus (12-18-15).pdf |

To whom it may concern,

Attorney Aaron A. Wernick of Furr and Cohen, P.A. represents R. Bradford Engelhardt in a Chapter 11 proceeding Case #10-41156-PGH.  The case has been confirmed and is still active.

We received the attached letter from Seterus dated December 18, 2015 concerning our client R. Bradford Engelhardt.  Mr. Engelhardt is the owner of the property located at 252 Lake Arbor Dr., Palm Springs, FL 33461 and the outstanding loan number     0444 serviced by Seterus, Inc.

To answer your question, this property is currently **occupied.**

Secondly please note for future correspondence that the address you have on file for Mr. Wernick is incorrect.  Please change the mailing address to Aaron A. Wernick, Esq. Furr and Cohen, P.A., 2255 Glades Road, Suite 337W, Boca Raton, FL 33431. Thank you.



**Coleen C. Workinger ✦ Paralegal to Aaron A. Wernick, Esq.**
**2255 Glades Road. Suite 337W ✦ Boca Raton, FL  33431**
**Ph. (561) 395-0500 ✦ Direct (561)-417-1575 ✦ Fax (561)-338-7532**
**Email: cworkinger@furrcohen.com ✦ Website: www.furrcohen.com**

Please consider the environment before printing this e-mail.

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended to be delivered to, and for the use of, only the individual(s) to whom it is addressed. It may contain information that is confidential, proprietary, attorney work product, attorney-client privileged, or subject to other doctrines and/or privileges recognized under applicable law. If you are not the intended recipient, do not read this message but instead please immediately notify the sender by electronic mail and by telephone to (561) 395-0500 and obtain instructions as to the disposal of the transmitted material. In no event is this material to be read, used, copied, reproduced, stored, or retained by anyone other than the named addressee(s) except with the express consent of the sender. DISCLAIMER REGARDING UNIFORM ELECTRONIC TRANSACTIONS ACT ("UETA") (FLORIDA STATUTES SECTION 668.50): If this communication concerns negotiation of a contract or agreement, UETA does not apply to this communication. Contract formation in this matter shall occur only with manually affixed original signatures on original documents.



PO Box 2008, Grand Rapids, MI 49501-2008

DM610E
9-769-17028-0000079-001-1-000-000-000-000

R BRADFORD ENGELHARDT
c/o AARON A WERNICK ATT AT LAW
7777 GLADES RD STE 400
BOCA RATON FL  33434-4193

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

**Correspondence**
PO Box 2008, Grand Rapids, MI 49501-2008

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

December 18, 2015
Loan number:      0444
Serviced by Seterus, Inc.

RE:  252 Lake Arbor Dr
     Palm Springs FL 33461-2161

Dear R Bradford Engelhardt:

We have been unable to determine if the property at the location listed above is vacant or occupied. If the property is vacant, we are now requesting permission to secure and maintain the property to help prevent code and covenant violations that might otherwise be assessed by the municipality or homeowners association. **Upon receipt of this letter, please email our Property Preservation department at PreservationBK@seterus.com to confirm the status of this property.** We will send you a letter each month, as per our policy, to verify occupancy.

**NOTE:** If you receive this letter and are not representing yourself in this bankruptcy, please disregard the above and instead request that your attorney contact us as soon as possible

Sincerely,

Seterus, Inc.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL OR FOR INFORMATIONAL PURPOSES ONLY. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. HOWEVER, THE LIEN AGAINST THE PROPERTY SECURING THIS DEBT MAY REMAIN ON THE PROPERTY UNTIL THE AMOUNT OWING ON THE LOAN IS PAID. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

H77 Arrow

# seterus.

PO Box 2008, Grand Rapids, MI 49501-2008

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

L310J

R. Bradford Englehardt
7660 Nemec Dr.
W.P.B, FL 33406

**Correspondence**
PO Box 2008, Grand Rapids, MI 49501-2008

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

July 22, 2016

Seterus, Inc. is unable to accept the enclosed funds because we are not able to identify the loan to which the payment should be applied.

If you have any questions, please contact us at our toll-free number above.

Sincerely,

Seterus, Inc.

Enclosure

R B PROPERTIES OF LAKEWOOD LLC

3136
63-751/631

EXPRESS   7-5-16   Date

Pay to the Order of   Fannie Mae   $ 500 —

Five hundred & 00/100   Dollars

WELLS FARGO BANK

For

⑆063107513⑆   1654⑈ 3136

THIS COMMUNI... ...ND ANY INFORMATION
OBTAINED WILL ...HIS LETTER IS NOT AN
ATTEMPT TO C... ...REGULATIONS. IF YOU
RECEIVE OR HA... ...IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE
DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc.
maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411569, 1411665,
1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do
business at 14523 SW Millikan Way, Beaverton, OR.                                                                                     Page 1 of 1

# seterus.

PO Box 1077, Hartford, CT 06143-1077

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

L310L
R. BRADFORD ENGELHARDT
7660 NEMEC DR.
W.P.B, FL 33406

**Correspondence, Inquiries, and Notices**
PO Box 1077, Hartford, CT 06143-1077

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

June 22, 2016

Seterus, Inc. is unable to accept the enclosed funds because we are not able to identify the loan to which the payment should be applied.

If you have any questions, please contact us at our toll-free number above.

Sincerely,

Seterus, Inc.

Enclosure

---

| | 3118 |
|---|---|
| R B PROPERTIES OF LAKEWOOD LLC | 63-751/631 |

6-5-16  Date

Pay to the Order of  Fannie Mae          $ 500 —

Five hundred 00/100                     Dollars

WELLS FARGO BANK

EXPRESS

For  _____-7841              R.

⑆063107513⑆        1654" 3118

THIS COMMUNICAT... ANY INFORMATION
OBTAINED WILL BE... LETTER IS NOT AN
ATTEMPT TO COLLE... ...ULATIONS. IF YOU
RECEIVE OR HAVE R... ...PONSIBLE FOR THE
DEBT. COLORADO:... ...ACT. Seterus, Inc.
maintains a local o... ...1411669, 1411665,
1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do
business at 14523 SW Millikan Way, Beaverton, OR 97005.

# seterus™

PO Box 1077, Hartford, CT 06143-1077

**Business Hours (Pacific Time)**
Monday–Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

L310L
R B PROPERTIES OF LAKEWOOD LLC
7660 NEMEC DR.
W.P.B, FL 33406

**Correspondence, Inquiries, and Notices**
PO Box 1077, Hartford, CT 06143-1077

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

June 9, 2016

Seterus, Inc. is unable to accept the enclosed funds because we are not able to identify the loan to which the payment should be applied.

If you have any questions, please contact us at our toll-free number above.

Sincerely,

Seterus, Inc.

Enclosure

THIS COMMUNIC... ...ID ANY INFORMATION
OBTAINED WILL ...HIS LETTER IS NOT AN
ATTEMPT TO CO... ...REGULATIONS. IF YOU
RECEIVE OR HAV... ...RESPONSIBLE FOR THE
DEBT. COLORAD... ...CES ACT. Seterus, Inc.
maintains a loca... ...Y: 1411669, 1411665,
1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.
                                                                                                   Page 1 of 1

## EXHIBIT "B"

R. Bradford Engelhardt
7660 Nemec Drive
West Palm Beach, FL  33406

August 26, 2016

Ocwen Loan Servicing, LLC

Re:   **R. Bradford Engelhardt**
    | **Property:** | **Acct #** |
    |---|---|
    | **215 Lake Arbor Drive** | **6553** |
    | **363 Lake Arbor Drive** | **0037** |
    | **152 Lake Arbor Drive** | **5425** |
    | **337 Lake Arbor Drive** | **5433** |

To whom it may concern:

Please consider this letter authorization for Ocwen to send all correspondence and monthly statements directly to R. Bradford Engelhardt, 7660 Nemec Drive, West Palm Beach, FL 33406, with regard to all loans serviced by Ocwen and listed above

R. Bradford Engelhardt

## Send Final Status Report

| | |
|---|---|
| Date/Time | 3/18/2015 11:08:44 AM |
| Sending ID | |
| No. of Pages | 7 |

| | |
|---|---|
| **Sent By:** | Patty Griffin |
| **Final Status:** | Fax Sent Successfully |
| **Recipient Name:** | Insurance Department |
| **Recipient Phone Number:** | ( ) |
| **Recipient Fax Number:** | (866) 807-1814 |
| **Recipient Company:** | Ocwen Loan Servicing |
| **Subject:** | Englehart Certificates of Insurance |

**Message:**

337 Lake Arbor Drive Palm Springs FL 33461  Loan #    5433
152 Lake Arbor Drive Palm Springs FL 33461        5425
215 Lake Arbor Drive Palm Springs FL 33461        6553    Confirmed

## Fax

| | | | |
|---|---|---|---|
| From: | Patty Griffin | To: | Insurance Department |
| Pages: | 7 | Fax: | (866) 807-1814 |
| Date: | 3/18/2015 10:54:22 AM | Phone: | ( ) - |
| Subject: | Englehart Certificates of Insurance | | |

Message:

337 Lake Arbor Drive Palm Springs FL 33461  Loan #:    043
152 Lake Arbor Drive Palm Springs FL 33461        5425
215 Lake Arbor Drive Palm Springs FL 33461        8553

All of these Certificates were previously sent to you on 12/12/2014.

Patty Griffin/Account Manager
States Insurance
pgriffin@statesinsurance.com
561-683-6383 Ext 1699

## Send Final Status Report

| | |
|---|---|
| **Date/Time** | 3/18/2015 11:13:49 AM |
| **Sending ID** | |
| **No. of Pages** | 3 |

| | |
|---|---|
| **Sent By:** | Patty Griffin |
| **Final Status:** | Fax Sent Successfully |
| **Recipient Name:** | Insurance Department |
| **Recipient Phone Number:** | ( ) - |
| **Recipient Fax Number:** | (843) 413-7133 |
| **Recipient Company:** | Centlar |
| **Subject:** | Brad Englehart Loan # 7118 |
| **Message:** | |
| Certificate of Insurance | |

# Fax

| Phone: (901) 853-9909 |
| Fax: (901) 854-9909 |

| | | | |
|---|---|---|---|
| **From:** | Patty Griffin | **To:** | Insurance Department |
| **Pages:** | 3 | **Fax:** | (843) 413-7133 |
| **Date:** | 3/18/2015 11:08:31 AM | **Phone:** | ( ) - |
| **Subject:** | Brad Englehart Loan #0 | | |

**Message:**

Certificate of Insurance

Phone: (561) 683-8383
Fax:    (561) 684-5995



| From: | Patty Griffin | To: | Insurance Department |
|---|---|---|---|
| Pages: | 7 | Fax: | (866) 807-1814 |
| Date: | 3/18/2015 10:54:22 AM | Phone: | ( )  - |
| Subject: | Englehart Certificates of Insurance | | |

Message:

337 Lake Arbor Drive Palm Springs FL  33461   Loan #.        5433
152 Lake Arbor Drive Palm Springs FL  33461                  5425
215 Lake Arbor Drive Palm Springs FL  33461                  6553

All of these Certificates were previously sent to you on 12/12/2014.

Patty Griffin/Account Manager
Slaton Insurance
pgriffin@slatoninsurance.com
561-683-8383  Ext 1659

## Send Final Status Report

| | |
|---|---|
| **Date/Time** | 4/8/2016 01:42:30 PM |
| **Sending ID** | |
| **No. of Pages** | 9 |

| | |
|---|---|
| **Sent By:** | Heidi McGuire |
| **Final Status:** | Fax Sent Successfully |
| **Recipient Name:** | |
| **Recipient Phone Number:** | ( )   - |
| **Recipient Fax Number:** | (866) 807-1814 |
| **Recipient Company:** | Ocwen |
| **Subject:** | Brad Engelhardt |
| **Message:** | |

re: Loan numbers

          5425
          6553
          5433
          0037

Master associa                                    date ALL files.

If corrections o                                    561-684-5995.

Thank you,

Heidi McGuire

---

**Fax**

Phone: (561) 683-9383 ext. * 305
Fax:   (561) 684-5995

| From: | Heidi McGuire | To: | |
| Pages: | 9 | Fax: | (866) 807-1814 |
| Date: | 4/8/2016 01:33:41 PM | Phone: | ( )   - |
| Subject: | Brad Engelhardt | | |

**Message:**

re: Loan numbers

          5425
          6553
          5433
          0037

Master association COIs enclosed for captioned loans, please update ALL files.

If corrections or otherwise are required please fax your request to 561-684-5995.

Thank you,

Heidi McGuire

**Phone:** (561) 683-8383 ext. 1305
**Fax:**    (561) 684-5995

# Fax

| | | | |
|---|---|---|---|
| **From:** | Heidi McGuire | **To:** | |
| **Pages:** | 9 | **Fax:** | (866) 807-1814 |
| **Date:** | 4/8/2016 01:33:41 PM | **Phone:** | ( )  - |
| **Subject:** | Brad Engelhardt | | |

**Message:**

re: Loan numbers

    5425
    6553
    5433
    0037

Master association COIs enclosed for captioned loans, please update ALL files.

If corrections or otherwise are required please fax your request to 561-684-5995.

Thank you,

Heidi McGuire